This action was brought by the plaintiffs for the purpose of *Page 353 
restraining the defendant from disconnecting their residences from the main sewer-pipe of the defendant company and for specific performance of the contract set out in the complaint. The undisputed facts are that, prior to 1902, there were several private companies and systems of sewerage in the city of Wilmington. That defendant company (440) was chartered by an act of the General Assembly of North Carolina (Private Laws 1893, ch. 382), by which it is permitted, authorized and empowered to establish a system of sewage in, under and through the streets and public lanes, roads and alleys of the city of Wilmington, and lay all such necessary pipes, conduits and mains as may be deemed requisite to carry out the provisions of said act, under such rules and regulations as may be prescribed by the Board of Aldermen of said city, and have authority to charge for the use of said sewers such reasonable sums as the board of directors may, from time to time, adopt, and to enforce the collection of such charges by severing the connection of said defaulting user with the main sewer. That permission was duly granted to the said defendant to lay down its pipe and construct a system of sewerage in the said city. That the plaintiffs are citizens and residents of said city, living along the streets upon which the defendant, pursuant to said authority, laid down its pipes and constructed its sewerage system. That plaintiffs entered into a contract with the said defendant company, the terms of which, as set out in the complaint, are as follows:
"That these plaintiffs and a great many other of the citizens of Wilmington, living along the streets and on the alleys upon which, by public authority, the defendant has laid down its pipes and constructed its sewerage system, whose names are not all known to these plaintiffs, and cannot by reasonable diligence be ascertained, were desirous of obtaining the benefit of an efficient sewerage system for their respective premises, and at what they regarded as a reasonable cost; and each of the plaintiffs, and the others so situated, approached the proper officers of the defendant and made application for connection, and, after some negotiations, the defendant company proposed to these plaintiffs, and for all others for whom this suit is brought, that if they would pay to the defendant the sum of fifty dollars for making the connection between the premises of each and every one of these plaintiffs (441) and the others, and the pipes of the defendant, that the defendant would charge each of them so paying the sum of fifty dollars, as an entrance fee, and for the use and service of the sewerage system of the defendant the sum of two dollars, as an annual fee or rental, and no more; or, alternately, that if persons desiring to connect with and *Page 354 
to use their said system preferred it, they might pay an entrance fee of twenty-five dollars and an annual rental of four dollars, and no more."
That pursuant to said contract the connections were made and plaintiffs have, in all respects, complied with the terms of said contract, paying the annual rental of two dollars per year. That the control of the stock of the defendant company passed into the hands of other persons subject to said contracts. That on 1 January, 1903, in disregard and in violation of the contract rights of the plaintiffs, the defendant undertook to raise the rate of annual rental for the use of said system.
The jury upon an issue submitted to them found for their verdict that the defendant entered into the contract with the plaintiffs as alleged. Under the instruction of the Court they found that, notwithstanding such contract, defendant had a right to raise the rate of annual rental.
The Court thereupon rendered the following judgment: "This cause, having been called for trial, and being tried, * * * and during the trial the plaintiffs' counsel having admitted in open Court, for the purposes of this action alone, that the rates charged as set forth in the answer in Exhibit B, are reasonable and not discriminative, and that the said rates set forth in the answer have been raised from the amount set forth in the complaint to the amount set forth in the answer, as shown in Exhibit B, and that a resolution of the defendant company, raising the rates, was promulgated on 2 November, 1902, to go into effect 1 January, 1903; and it being further admitted (442) by the defendant that the plaintiffs continued to pay at the old rates up to 1 January, 1903, and that the present owners of the corporation obtained control thereof some time in the year 1901; and it being further admitted that this suit began on 1 March, 1903, and that the payments made by the plaintiffs under the old rate were paid by them from 1 January, 1902, to 1 January, 1903; and it being admitted that the following plaintiffs obtained their connection with the defendant company, paying fifty dollars connection fee, and two dollars annual dues, on the dates mentioned, as follows * * * : It is ordered, adjudged and decreed by the Court, that the restraining order heretofore issued in this cause be and the same is hereby dissolved, vacated and annulled. It is further ordered, adjudged and decreed by the Court, that the plaintiffs are not entitled to a perpetual injunction in this cause."
The plaintiffs excepted to said judgment and appealed, assigning *Page 355 
errors alleged to have been committed in the course of the trial and in rendering the judgment, all of which, other than those abandoned, are set out in the opinion.
Considered from the point of view in which this case was argued by counsel, and which we think decisive of the merits of the controversy, much of the testimony and many of the exceptions become immaterial. There is no substantial contradiction in the testimony regarding the terms of the contract. The jury having found it to be as allaged [alleged] in the complaint, we concur with plaintiffs that the second issue was unnecessary. The relative rights and duties of the parties under the contract become, in the light of the admissions, questions of law for the decision of the Court. The plaintiffs insist that we decided the question when the case was here upon an appeal from the order continuing the injunction (443) of the hearing. We cannot concur in this view; it must be conceded that the writer of that and of this opinion used language calculated to make such an impression. The only question then before the Court was whether the defendant should be enjoined, pending the litigation. For the reasons and upon the authorities there set out we held with the plaintiffs' contention. We then said: "Whether the plaintiffs shall be entitled to specific performance of the contract, and for what length of time the contract shall exist, and to what extent it might be in the power of the defendant corporation to perform the contract without impairing or destroying its power to perform its duties to the public, or whether the rates now charged are unreasonable or discriminating are all questions to be determined upon the facts as they may be found by some competent tribunal upon the final hearing."
The effect of an appeal from an order continuing or refusing to grant an interlocutory injunction is discussed in Carter v. White, 134 N.C. 466. The decision of such an appeal is neither an estoppel nor the "law of the case." It effect upon the rights of the parties to the action in the final hearing is pointed out in the decision in that case. The plaintiffs concede that the contract does not create or vest in them an easement to flow their sewage through the pipe, because not in writing, nor is it a license to do so.
Plaintiffs' counsel, with his usual frankness, rests his case upon the proposition that his clients have made a valid contract with defendant *Page 356 
founded upon a valuable consideration, and that by reason of the peculiar nature of the subject-matter of the contract, the right acquired under it can only be secured to them by a decree for specific performance and a perpetual injunction against its infringement. That no time being fixed for the life of the contract, it extends to the corporate life of the defendant company. This the defendant denies, and (444) insists: 1. That no time being fixed during which the two-dollar rate was to continue, it is indefinite, and therefore its specific performance cannot be enforced. 2. That the contract is wanting in mutuality, that defendant only is bound, whereas plaintiffs are under no obligation to use the sewer and pay the two-dollar rate. 3. That the defendant company is a public utility, subject to the well-defined duty to serve all persons entitled to its service, at reasonable rates, without discrimination between its customers.
If the defendant can sustain either of these propositions, the plaintiffs may not invoke the equitable jurisdiction of the Court. These are certain well-defined limitations imposed by the courts upon the right to call for specific performance of contracts.
After enumerating several of the requisites essential to the right to demand specific performance, Mr. Bispham says: "The other circumstances, in addition to those already mentioned, which usually influence the discretion of a Chancellor in decreeing or refusing specific performance, are that the agreement must be mutual, that its terms must be certain, and that its performance by the Court must be practicable." Equity, 377. He further says: "It was one of the rules laid down by Lord Rosslyn in Walpole v.Oxford, that all agreements, in order to be executed in this Court, must be certain and defined, and the law, as thus stated, is well settled, both in England and in this country. If the uncertainty is owing to the default of the defendant or, in obedience to the maxim, id certum est quad certumreddi potest, performance will be decreed if the means of ascertaining the contract are at hand." In Leigh v. Crump, 36 N.C. 299, Gaston, J., says: "An agreement, to be carried into execution, must be certain, fair and just in all of its parts. Although it will be valid at law and, if it had been executed by the parties, could not be set aside because of any (445) vice in its nature, yet, if its strict performance be, under the circumstances, harsh and inequitable, a court of equity will not decree such performance, but leave the party claiming it to his legal remedy." The uncertainty in this contract is in respect to its duration. How long shall the plaintiffs enjoy the right to use the sewer-pipe of defendant company? They say "as long as they please, even to the *Page 357 
life of the company, by paying the annual dues." This would extend it sixty years. Private Laws 1893, ch. 382.
Defendants say that as the charge of two dollars a year is a rental, the contract is for but one year, or, at most, from year to year, with a right on its part to put an end to it after reasonable notice. If it be suggested that the right continued for a reasonable term and until, by reason of changed conditions, or, as defendant says, largely increased cost of building and maintaining the sewerage system, it would become harsh and unjust to compel its continuance, we would have no satisfactory guide by which to fix the limit of its duration. If we seek for analogies for guidance, we find but little aid.
In contracts for personal service the English rule is that, when no time is fixed and no stipulation as to payment made, it will be presumed to extend for a year. In this country, when no time is fixed, and no stipulated period of payment made, the contract is terminable at the will of either party. 20 A. E. (2 Ed.), 14. This seems to be the rule adopted by this Court in Edwards v. R. R., 121 N.C. 490.
We cannot think that it was the intention of the parties that the contract was to last for sixty years. To put this construction upon it would, when we consider the probable changes in the status of the property and the parties, the growth of the city and enlarged demands upon defendant company, the almost certain exhaustion of the connecting pipes from wear, weather and other causes, be unreasonable. Again, how would it be possible for a court of equity to supervise and enforce the performance of its decree during so long a period? If we do not adopt the plaintiffs' view in respect to the duration (446) of the contract, we have no guide, and if we reject, as equally unreasonable, the defendant's contention that it is limited to one year, we are confronted with the insuperable difficulty that the contract, in regard to one of its essential elements, is uncertain and therefore not capable of specific performance. This view does not involve the proposition that the contract is void for uncertainty.
In an action for damages for breach of the contract we presume that the law would read into it that the right to use the sewer, upon the terms fixed, should continue for a reasonable time — to be settled in view of the character of the contract and all other matters and things pertinent to the inquiry. In this view of the case, we simply hold that, by reason of its uncertainty in respect to time, specific performance will not be decreed.
In regard to the second objection urged by defendant, we find the rule laid down by courts of equity to be, that a contract which is not *Page 358 
mutual, that is, in which both parties are not and cannot be bound by the decree, will not be specifically enforced. In Ten Eyck v. Manning,52 N.J. Eq. 47, Van Fleet, V. C., speaking of the right to demand specific performance of contracts, says: "The enforcement or denial of this remedy is regulated by certain well-established principles, one of which is that it will not be granted, as a general rule, in cases where mutuality of obligation and remedy does not exist; or, stated in another form, mutuality of remedy is essential to the maintenance of a suit for specific performance," citing Fry on Spec. Perf., sec. 286; Waterman Spec. Perf., sec. 196.
In Beard v. Linthicum, 1 Md. ch. 345, it is said that if one of the parties is not bound, or is not able to perform his part of the contract, he cannot call upon the Court to compel specific performance by the opposite party. Duvall v. Myers, 2 Md. ch. 401. The (447) principle is well stated in Woodruff v. Woodruff, 44 N.J. Eq. 349
: "The lack of mutuality, it is claimed, exists in the fact that the covenant gives the complainant the right to repurchase, but does not provide that he must do so. It is laid down, as a general rule, that equity will not specifically enforce the performance of a contract when, from its terms, a right does not arise in favor of each party against the other, and when each party is not entitled to the equitable remedy of specific execution of such obligation against the other contracting party," citing Pomeroy Spec. Perf., 162; R. R. v. Ripley, 77 U.S. 339. As stated in the opinions cited, and by Mr. Bispham and other authors, there are exceptions to these general rules, as when, by the terms of the contract, it is optional with the plaintiff to be bound, and he elects and consents that he will be so bound, as in contracts for the sale of land, he will pay the purchase-money, or immediately perform the contract on his party. The contract becomes mutual and, if otherwise free from obligation, will be specifically enforced. There are decided cases, however, which hold that the element of mutuality must enter into the contract at its inception. That if either party could not demand strict performance will not be decreed. It is said by the Supreme Court of Arkansas: "What is meant by mutuality of remedy is that the contract must be of such a nature that performance on both sides can be judicially secured." Shields v. Trammell,19 Ark. 51; 26 A. E., 32.
In Rodman v. Robinson, 134 N.C. 503, this Court held that when a contract was entered into to convey land, the promise to pay the purchase-money constituted a valuable consideration to support the promise. *Page 359 
This is unquestionably correct. The case was argued and decided largely upon other questions, and that which we are discussing was not pressed or considered. There is much contrariety of opinion where mere options will be specifically enforced. (448)
Ours is not the case of an ordinary option; parties who are not bound ask specific performance of a contract to run sixty years, during which time they may at any moment put an end to it by refusing to pay the rental. We have here several parties suing, for themselves and many others not known to them, to compel specific performance on the part of the defendant of a contract to run for considerably more than the average life of an adult human being, during all of which period, either by death, sale of the property connected with the sewer, or at the mere will and pleasure of any one or more of them, the contract may be terminated and the defendant be without remedy to compel plaintiffs to continue to use the sewer.
The difficulties which would be encountered in attempting to make or enforce a decree in such a case are pointed out in R. R. v. Marshall,136 U.S. 393. Plaintiffs urge upon our attention Telegraph Co. v. Harrison,145 U.S. 459. The objection made to the decree in that case was that by reason of change of conditions since the execution of the contract, and increased value of the privilege conferred to maintain the wires upon the poles of the plaintiff company, specific performance would be harsh and inequitable. The Court held that in ascertaining the value of the privilege it would look to the conditions existing at the time of making the contract, and that no such change in conditions was shown to deprive the defendant of the right to have strict performance. The general principles governing the courts in such cases were conceded. The facts were peculiar, and in many respects distinguishable from those before us. Fuller C. J., and Brewer, J., dissented from the decision in that case.
The last objection urged by defendant against the relief demanded presents interesting and important questions. How far contracts of this character may be made by corporations owing a duty to serve the public at reasonable rates and without discrimination, (449) is an interesting question. Whether such contracts are void, as contrary to public policy, or become unenforceable when it is shown that their enforcement will disable the corporation from serving the public, is also interesting. We are not prepared, and it is not necessary for us to do so, to decide the question. The authorities cited by defendant sustain its contention that the contract is made subject to the limitations imposed by the charter, and that whatever rights *Page 360 
plaintiffs acquired are subject to such provisions. Salt Lake City v.Hollister, 118 U.S. 256; Cent. Trans. Co. v. Pul. Pal. Car Co.,139 U.S. 24. It seems well settled that a public corporation or a private one owing the duty to serve the public, charging reasonable and equal rates, cannot contract away its power to discharge such duty. The principle has been applied by this Court to County Commissioners in Glenn v. Comrs.,139 N.C. 412, and to Town Commissioners in Edwards v. Goldsboro,141 N.C. 60. In the opinion of Mr. Justice Walker, in the last case, authorities are cited applying it to railroad companies. That gas and water companies come within the rule is well settled. Griffin v. Water Co.,122 N.C. 206; Williams v. Gas Co., 52 Mich. 499. The same reasons apply to sewerage companies. We do not understand the plaintiffs to controvert this proposition. Plaintiffs admit that the advanced rates are reasonable and not discriminative. Defendant makes an allegation, in its answer, which, if true, would seem to show that if compelled to serve plaintiffs at the contract rate, it would be unable to serve other citizens of Wilmington at what is conceded to be a reasonable rate. No facts, however, in this respect are found or admitted; hence, we may not consider the allegations in this connection. We place our conclusion upon the ground that the contract is uncertain in regard to its duration and that there is an absence of mutuality in the obligation. We incline to the opinion that if we were to (450) accept the plaintiffs' view that it gave them the right to use the sewer at the contract rate for sixty years, in view of the character of the contract, its subject-matter, and defendant's duty to render equal service at equal rates to all of the citizens of Wilmington, the contract would be unreasonable, and therefore plaintiffs would not be entitled to the decree demanded.
Upon an examination of the entire record we concur with his Honor, and the judgment must be
Affirmed.
Cited: Durham v. Cotton Mills, 144 N.C. 714; Burns v. McFarland,146 N.C. 384; Currier v. Lumber Co., 150 N.C. 695; Wagon Co. v. Riggan,151 N.C. 306; Telephone Co. v. Telephone Co., 159 N.C. 17. *Page 361