### CROWN ORCHARD CO., Inc., v. DENNIS et al.

(District Court, D. South Carolina. January 21, 1915.)

No. 124.

**1. COURTS ⟨key⟩262—UNITED STATES COURTS—JURISDICTION—STATE LAWS.**

The federal courts are compelled to observe the distinction between actions at law and suits in equity, and, when sitting in equity, can take jurisdiction under the express provisions of Rev. St. § 723, only where there is no plain, adequate, and complete remedy at law, and this jurisdiction cannot be enlarged or extended by state statutes or procedure.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. ⟨key⟩262.]

**2. COURTS ⟨key⟩367—UNITED STATES COURTS—STATE LAWS AS RULES OF DECISIONS.**

In construing a deed to standing timber in South Carolina, if the courts of South Carolina have adopted a rule of construction applicable to such deed, it must be followed by the federal courts, subject to certain limitations.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. ⟨key⟩367.]

**3. LOGS AND LOGGING ⟨key⟩3—SALES OF STANDING TIMBER—REMOVAL.**

A deed to all standing timber on certain land in South Carolina of a specified size reserved to the grantor the right to use timber for ordinary plantation purposes, but provided that this should not include the right to clear the land, and provided that the grantee should have eight years in which to cut and remove the timber, and that, if it was not cut and removed within that time, it should have such additional time as might be desired for cutting and removing it, and in such case should pay interest on the original purchase price year by year in advance. The grantor was to pay all taxes on the land and timber. It was the mutual understanding that the cutting was to commence within eight years, and that, if the timber was not all cut off within that time, the grantee should have such additional time as was necessary to cut off the remaining timber, and that the grantor wanted to clear the land and open it to cultivation. *Held;* that the deed did not give the grantee an indefinite time to remove the timber, but only the time fixed, with a reasonable extension thereof to complete the cutting and removal; and hence it was not entitled, in a suit, to enjoin the removal of the timber by one of the grantor's heirs claiming under a deed from the other heirs to a decree extending the period for removing the timber 25 years, especially in view of the burden which this would place on the owners of the land, the lack of mutuality in the contract which gave the grantee the option of paying interest and obtaining an extension or stopping payment and leaving the owner without remedy, the uncertainty in the terms of the contract, and the impracticability of enforcing the contract by reason of the inability to distinguish at the expiration of 25 years between timber covered by the contract and timber not so covered.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6-12; Dec. Dig. ⟨key⟩3.]

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. LOGS AND LOGGING** ⬡⟹3—SALES OF STANDING TIMBER—EQUITABLE RE-
LIEF.

Where the cutting and removal of the timber was not commenced within the eight years, the court would not grant a reasonable time thereafter to cut and remove it, but would leave the grantee to its remedy of law, especially where it appeared that the owners of the land were solvent.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. ⬡⟹3.]

**5. LOGS AND LOGGING** ⬡⟹3—SALES OF STANDING TIMBER—CONSTRUCTION OF
CONTRACT.

In construing deeds to standing timber, the intention of the parties should be ascertained and enforced as in the construction and enforcement of other contracts.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. ⬡⟹3.]

**6. LOGS AND LOGGING** ⬡⟹3—SALES OF STANDING TIMBER—CONSTRUCTION OF
CONTRACT.

A grant of standing timber, while executed in respect to the grant, is executory with respect to the cutting and removal of the timber.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. ⬡⟹3.]

**7. SPECIFIC PERFORMANCE** ⬡⟹120—EVIDENCE—PAROL EVIDENCE.

While, in the absence of fraud or mistake, parol evidence is not competent to contradict or alter a written contract, when specific performance is sought the court may hear evidence, in order that it may be in possession of every fact and circumstance attending the negotiation and execution of the written agreement, to enable it to so mold its decree, that justice and right may be awarded.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 384–386; Dec. Dig. ⬡⟹120.]

In Equity. Bill by the Crown Orchard Company, Incorporated, against William H. Dennis and others, for an injunction, etc. Bill dismissed.

The bill, answer, and proofs make the following case:

The complainant is a corporation created and organized February 19, 1912, under the laws of the state of Virginia, with a maximum capital stock of $15,000. Its principal office is at Crozet, Albemarle county, Va. "The purposes for which it is formed are to acquire, hold, lease, manage, operate, develop, cultivate and control real estate, improved and unimproved, and the appurtenances thereto; to grow orchards of all kinds, nursery stock, general farm products, live stock and poultry; to acquire and operate plants for the manufacture of cider, vinegar, canned goods and all by-products of fruit, vegetables and farm products; to build and operate warehouses, storage houses and cellars of all kinds; to construct, maintain and rent any other buildings, either on lands owned by the company, or on the property of others for the betterment of its property, or any part thereof; to buy and sell timber and lumber of all kinds; to manufacture barrels, crates, boxes or any other articles that may be necessary or convenient in the conduct of the foregoing business; to sell nursery stock, orchard, mill, farm and manufactured products; to act as agent for others for the sale of any or all of the above goods and property and to buy and sell any and all articles of personal property and merchandise, and to transact all business and to do all other things incidental thereto, which may be necessary and convenient in the judgment of the board of directors for the purpose of the company." It is also given power to borrow money, issue its bonds therefor, and execute mortgages and deeds of trust to secure the same. Certificate of Incorporation, Plaintiff's Exhibit 5. The defendants are residents and citizens of the Eastern District

of the state of South Carolina. The amount in controversy, exclusive of interest and cost, exceeds the sum of $3,000.

On May 5, 1903, E. J. Dennis, the ancestor and predecessor in title of defendants, being seised in fee of a tract of land, lying and being situate in Berkley county, S. C., known as "Fair Springs," upon which he then resided, containing 660 acres, together with his wife, A. H. Jennings, executed a deed to Freeman S. Farr, trustee, in which he conveyed to said Farr, trustee, his heirs, executors, administrators, and assigns, in consideration of the sum of $1,500, "all the timber of every kind and description, both standing and fallen, of ten inches stump diameter and upwards, twelve inches from the ground at the time of cutting," on said tract of land, reserving the timber "on five acres immediately around dwelling house." He also reserved "the right to use any timber from the said tract for ordinary plantation purposes connected with the said land; this reservation, however, not to include the right to clear the said land or any of it." By said deed was granted to Farr, trustee, "a permanent right of way 62 feet wide upon and across the tract or tracts of land described as aforesaid and all contiguous land, to be selected and located by the said party of the second part, his heirs, executors, administrators, or assigns, whenever and wherever so desired, to be used for a permanent railroad, or tramway, or for any permanent branch railroad or tramway, together with the following exclusive rights and privileges to be exercised at any and all times during the continuance of this contract, at the pleasure of the said party of the second part, his heirs, executors, administrators, and assigns, namely, to enter freely upon said above-described tract or tracts of land," etc. The purposes for which these easements are granted are to locate and establish rights of way over said land and contiguous lands, for ingress and egress at any and all times for men, teams, and vehicles; to cut and make roads over said lands; to build, construct, maintain, and operate railroads, tramways, cart and wagon ways, across said lands, on such routes as may be selected by said second party; to establish and maintain stables and other fixtures or buildings on said land; and to do any and all things that may be necessary or convenient for the cutting, handling, hauling, and removing of the timber, as aforesaid, from the aforesaid tract or tracts of land, and for the transportation of any other timber and articles, of every kind and description, that the second party may desire to transport over the said roads, or any of them. The right and power is also given to cut such small timber from the land as the party of the second part may, in his judgment, deem necessary to build and operate the railroads, tramways, buildings, fixtures, and structures during the continuance of the contract, or with the right to remove all such railroads, tramways, etc. Following the habendum clause in the deed is a covenant of warranty.

"Second. That the said parties of the second part, his heirs, executors, administrators and assigns, shall have, and the same is hereby granted to them, the period of eight (8) years, beginning from the date hereof, in which to cut and remove said timber from the said land, and that in case the said timber is not cut and removed from said land before the expiration of said period, then that the said second party, his heirs, executors, administrators or assigns, shall have such additional time as may be desired for cutting and removing said timber, but in the last-mentioned event the said second party, his heirs, executors, administrators, or assigns, shall, during the extended period, pay interest on the original purchase price above mentioned, year by year, in advance, at the rate of six per cent. per annum." The owner of the land further covenants that he will pay all taxes now due, or that may become due, on said land and timber, and upon his failure to do so the party of the second part may do so and have a lien on the land therefor. "All covenants, stipulations and agreements herein assumed, or undertaken by either party to this contract, shall be binding upon their respective heirs, executors, administrators or assigns, and all benefits and advantages herein provided for, either of the said parties, shall accrue to their respective heirs, executors, administrators or assigns, as the case may be." The deed is signed by the grantors and grantee, and duly proven and registered.

On September 23, 1904, the said Freeman S. Farr, trustee, conveyed and assigned the timber conveyed in said deed, together with the timber on 58 other tracts, to the Oneida Timber Company, a corporation created by and organized under the laws of South Carolina. He also transferred all such rights of way, etc., and "rights to time for removing such timber, or any of it, and rights to extend such time," to said timber company. It is recited in said deed that said Freeman S. Farr held said timber as trustee and conveyed the same to said company by way of executing the trust.

On June 30, 1910, the Oneida Timber Company conveyed said timber, together with a large number of other tracts of standing timber, to the Midland Timber Company, a South Carolina corporation. While the language of this deed is not so explicit in the description of the right to the time granted and extension thereof transferred, it may be taken as sufficient for the purpose of vesting in the grantee all of the rights in that respect, owned by, or vested in, the grantor.

E. J. Dennis died intestate prior to the 29th day of April, 1911, leaving his wife, the defendant A. H. Dennis, to whom, together with his children, the other defendants, the land, upon which the timber conveyed was standing, descended. No portion of said timber having been cut or removed on or prior to said 29th of April, 1911, the Midland Timber Company, by R. L. Montague, its general manager, delivered to defendants "E. J. Dennis and his two sisters and mother (A. H. Dennis) and brother" a paper writing (Defendants' Exhibit 1), in which the execution of the said deed to Freeman S. Farr, trustee, is recited, and that by sundry mesne conveyances all of the timber rights, rights of way, privileges, and easements had been conveyed to said Midland Company and reciting further that: "Whereas the said Midland Timber Company desires to exercise its rights under the said deed to extend the time in which to cut and remove the said timber, and to use and enjoy the aforesaid timber rights, ways, privileges and easements according to the terms of said deed of conveyance for a period of twenty-five years. That said Midland Timber Company notified the said parties, owners of said land, "that, it desires twenty-five years additional time, after the 5th day of May, A. D. 1911, within which to cut and remove said timber and to use and enjoy the said timber rights, ways, privileges and easements, during which extended period, or so much of the same as may be used for such purposes, it hereby agrees and binds itself, its successors and assigns, to pay interest at the rate of six per cent. annum, year by year, in advance, on the original purchase price of fifteen hundred dollars, as provided in and by the said deed, and in pursuance thereof it hereby tenders and offers to pay to the said A. H. Dennis individually and * * * heirs at law of the said E. J. Dennis, Sr., deceased, the sum of ninety dollars (said sum being six per cent. on the original purchase price of fifteen hundred dollars) for the first year of said period of twenty-five years; that is to say, from the 5th day of May, 1911, to the 5th day of May, 1912. It is, however, expressly understood that this notice of the intention and purpose of the said Midland Timber Company to extend the time within which to cut and remove the said timber and use and enjoy the said timber rights, ways, privileges and easements, as aforesaid, is not intended, nor shall it be taken, to limit, in any manner whatever, the grant in fee simple of the permanent and exclusive right of way as is set out in the aforementioned deed of conveyance executed by E. J. Dennis, Sr., and A. H. Dennis to Freeman S. Farr, trustee." The defendants refused to accept said tender, claiming that the period for cutting and removing said timber expired on May 5, 1911. There is evidence tending to show, but contradicted by defendants, that on May 5, 1911, the Midland Timber Company, by its general manager, tendered to defendants the interest on the sum of $1,500, which was refused. Defendants do not deny that they claimed, and have at all times claimed, that the time for cutting and removing the timber expired May 5, 1911. No further tender was made by the Midland Timber Company. On June 28, 1913, the Midland Timber Company executed to complainant, the Crown Orchard Company, a deed reciting a present consideration of "fifty-eight thousand six hundred and forty-two and $^{50}/_{100}$ dollars to it, in hand paid, at and before the sealing and delivery of these presents, by

the Crown Orchard Company, Inc.," conveying to complainant the timber, timber rights, etc., on seven tracts of land, aggregating 7,000 or 8,000 acres, including the land upon which the timber in controversy, conveyed by Dennis to Farr, trustee, is situate. No part of the recited consideration was paid; there was an agreement by which the Crown Orchard Company was "to pay for the timber as cut." The timber on the Dennis land was estimated, by complainant's witness, on September 2, 1909, to be of the value of $4,850.

The bill was filed herein January 28, 1914, and at that time complainant paid to the clerk of this court, in legal tender, $270, and on May 5, 1914, $90, which is held by him in the registry subject to the order of the court. Complainant owns no land in South Carolina, and no other timber than that conveyed in the deed above mentioned. It owns several hundred acres of Orchard land in Albemarle county, Va. Complainant's president was told, before taking the deed, that defendants "refused the tender of the extension money." Neither the Midland Timber Company nor complainants have ever operated a mill nor engaged in cutting timber—never made any effort to cut defendants' timber. The evidence shows that the Atlantic Coast Line Railroad Company runs within a quarter of a mile of the Dennis land. About 300 or 400 acres of the Dennis land is capable of being cleared and cultivated. The timber "is easy to get out—could be cut in one year—with small mill."

On December 24, 1913, the defendants, other than W. H. Dennis, executed a deed to said W. H. Dennis, conveying the standing timber of the "Fair Springs" tract for a recited consideration of $2,000, giving to him the period of four years within which to cut and remove same. Defendant W. H. Dennis entered upon said land, and placed a small mill thereon, and began cutting the timber, and was so engaged when enjoined by an order of the court in this cause. The testimony in regard to other matters is more or less conflicting.

Montague & Montague, of Richmond, Va., L. D. Lide, of Marion, S. C., and Octavus Cohen and Smythe & Visanska, all of Charleston, S. C., for complainant.

W. P. Pollock, of Cheraw, S. C., and B. A. Hagood, of Charleston, S. C., for defendants.

CONNOR, District Judge (after stating the facts as above). The case was argued both orally and upon very full briefs by counsel for both parties; in view of the far-reaching effect of the final result upon valuable property rights, and the conflict found in decided cases and judicial opinion, I have given the several phases of the case very careful consideration. The historical development of judicial thought regarding sales of standing and growing timber, wherein an immediate removal was not contemplated by the parties, is interesting, but not at all times uniform. The decisions of the courts, expressing such judicial opinion, have been more or less modified to meet modern conditions surrounding such sales, the development of the milling business, and seeking to give effect to the intention of the parties.

[1] In the investigation of decided cases, care must be had to ascertain whether they are actions at law or suits in equity. It will also be observed that in many cases found in modern reports the courts have, under the Code Procedure, administered both legal and equitable remedies in the same action, whereas this court is compelled to observe the distinctions prescribed by the federal Constitution and statutes respecting actions at law and suits in equity. This court, sitting in equity, can take jurisdiction only when there is no plain, adequate, and complete remedy at law. Rev. St. § 723; 4 Fed. Stat. Ann. 530. The ju-

risdiction of this court cannot be enlarged or extended by state statutes or procedure. Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358. The relevancy of these principles will appear as we proceed with the development of the case. Plaintiff rests its right to relief in equity upon certain propositions clearly stated and forcibly argued.

[2] 1. In construing the terms of the deed and its several parts, the construction of deeds containing the same, or essentially the same, terms, by the court of South Carolina, must be followed by this court. This proposition is correct, subject to certain limitations, where it is shown that the courts of South Carolina have adopted a rule of construction applicable to the deed upon which plaintiff relies.

[3, 4] 2. In South Carolina it is held that a conveyance of standing timber, without condition, vests the absolute title to the timber in the grantee, and the courts will not read into such deeds an intention on the part of the parties that the timber is to be cut and removed in a reasonable time, but the grantee has, in such cases, an indefinite time to cut and remove the timber. "This," it is insisted, "is settled in South Carolina."

To sustain this proposition, plaintiff relies upon the decision in Knotts v. Hydrick, 12 Rich. (S. C.) 314, and Wilson Lumber Co. v. Alderman, 80 S. C. 106, 61 S. E. 217, 128 Am. St. Rep. 865. It therefore becomes necessary to examine these cases. Knotts v. Hydrick was an action at law. Wilson Lumber Co. v. Alderman was a civil action in the nature of a suit in equity, seeking an injunction, by the grantee of the timber, against the owner of the land, restraining him, or his subsequent grantee, from cutting the timber. The decision was rested clearly and solely upon the authority of Knotts v. Hydrick. Conceding to these decisions their full authoritative value, defendants insist that they do not apply to or control the decision of the instant case, because, in the deed from Dennis to Farr, trustee, a time is fixed within which the timber is to be cut and removed, and that the distinction between cases in which such limitation is found and those in which there is no such limitation is recognized by the Supreme Court of South Carolina.

In Flagler v. A. C. Lumber Corporation, 89 S. C. 328, 71 S. E. 849, the Hydrick and Wilson Lumber Co. Cases were relied upon by the defendant. In that case the timber "12 inches stump diameter, and upwards, 12 inches from the ground at the time of the cutting, now standing and being upon the land described," was conveyed. The deed contained a clause giving to the grantee a time limit of ten years from the time the grantee began cutting and removing the timber, with an extension clause "from year to year" by paying 6 per cent. interest each year on the purchase price. The learned judge, writing for the court, said:

"It will be noted that neither in the case of Knotts v. Hydrick nor Wilson Lumber Co. v. Alderman was there an attempt made in the deeds to limit the right of the owner of the timber to any given period of removal, * * * and all this court held was that, in the absence of such limitation upon the right of removal, such right of removal continued to exist in the owner of the timber. In other words, the deeds under construction failed to show, by anything on their face, any intention on the part of the parties thereto of limiting the right to remove."

In the Flagler Case the court found, upon the face of the deed, that the parties had made "an attempt to limit the time in which removal can be made." It is further said:

"It is enough to say that the words used in the contract were absent in Knotts v. Hydrick and Wilson Lumber Co. v. Alderman; nor were any provisions of similar import found in either of those cases; and we are therefore of opinion that they do not control the case now under consideration."

The judge proceeds to discuss the question as to the construction of the deed then before the court as open, and "to examine the authorities as to what the law is." He begins an examination of the contract for—

"what light it gives as to the intention of the parties, for in the last analysis their intent is the controlling factor in the construction of the deed, provided the instrument furnishes the evidence of the intent; and here it is to be borne in mind that, whilst the deed in the words used is at first such words as ordinarily convey a fee-simple title, the deed is signed by both the grantor and grantee, and the reason for this lies in the fact that the parties intended to bind each other to certain obligations; upon the grantor, the passing of title to the grantee, and upon the grantee, not only the right to remove, but, in a qualified sense, the duty also of so doing. A time limit * * * was evidently in contemplation."

After discussing the contention of the defendant, he says:

"So it would follow that there would be nothing to prevent the grantee from indefinitely holding the land in its original condition; * * * and in the meantime the land would remain incumbered and unfit for cultivation. And during this long period the grantee was to pay taxes, not only on the land, but on the timber as well. Was this contemplated by the parties? We think not. Some lesser period of time must have been in the minds of the grantor and grantee. What this lesser period was the agreement fails to show. What rule does the law supply in such a case?"

After discussing a number of decided cases from other jurisdictions, the conclusion is reached:

"That both by the inherent reason of the thing, as well as by authority, the true rule is that wherever it is apparent in a contract that the parties had in view some time for the commencement of the removal of the timber, which intent was not embodied in the terms of the contract, that the law will presume and will enforce that such commencement of the removal of the timber shall be within a reasonable time from the date of the contract."

This decision points out clearly the distinction between the terms of the deed in that case and in Hydrick and Wilson Lumber Company Cases, and states that these cases are not controlling authorities in cases where the terms of the deed or contract indicate an intention to place a time limit on the right of removal—that in such cases a reasonable time will be given for removal.

The principle or rule of construction announced in the Flagler Case is uniformly approved and applied in every other case which has come before the Supreme Court of South Carolina, with the single exception of Timber Co. v. Prettyman, 97 S. C. 247, 82 S. E. 484. This case will be examined and its authoritative value considered later on.

In McClary v. Atlantic Coast Lumber Co., 90 S. C. 153, 72 S. E. 145, the extension clause in the deed is in the identical terms found in the

Dennis deed. It is expressly held, upon the authority of the Flagler Case, that:

"Such deed, though a valid conveyance of the fee, passed a qualified or determinable fee only; the grantee or his assigns being required to commence the removal of the timber within a reasonable time, as viewed by the parties when the contract was signed." Atlantic C. L. Lumber Corp. v. Litchfield, 90 S. C. 363, 73 S. E. 182; McSwain v. Atlantic Coast Lumber Corp., 96 S. C. 155, 80 S. E. 87.

The decisions of the South Carolina Court are, as I understand them, in harmony with those of a large majority of other courts. The authorities are collected and discussed in Young v. Camp. Mfg. Co., 110 Va. 678, 66 S. E. 843. Among the cases cited by the learned president, writing for the court, may be noted, as of special application, MacRae v. Stillwell, 111 Ga. 65, 36 S. E. 604, 55 L. R. A. 513; Adkins v. Huff, 58 W. Va. 645, 52 S. E. 773, 3 L. R. A. (N. S.) 649, 6 Ann. Cas. 246; Hill v. Hill, 113 Mass. 103, 18 Am. Rep. 455. The conclusion reached by the court is clearly thus stated by Judge Keith:

"Looking to the whole deed—and all of its provisions must be considered in order to arrive at its proper construction—we are of opinion that it was not the intention of the parties to give an absolute and unconditional title to the timber, but only such as was cut and removed within the time limited by the deed, and such extensions thereof as the grantee was entitled to demand upon a fair construction of the deed, or as might be agreed upon between the parties."

The language of the deed under consideration in that case was very similar and in essential respects identical with that found in the deed from Dennis to Farr, trustee. Judge Keith calls attention to the "incidental rights" which passed under the deed creating burdens, easements, and privileges which he says "impose such burdens upon the land of the grantors as greatly to diminish, if not indeed to destroy, its value." The learned counsel for complainant vigorously attacks the soundness of this decision, insisting that it violates the principles of the common law, and that the learned court "fell into error" by treating the deed as a transfer of personal property, following the decisions of courts which hold that standing timber is personalty. The well-considered discussion of the authorities and the principles involved create, in my mind, the conviction that the learned judge, with his uniform care and thoroughness of investigation and consideration, did not fall into the error suggested. There is nothing in his language to indicate that he overlooked the almost uniform holding of the courts that standing and growing trees were real estate. It is true, as said by the learned counsel, that from the time of Lord Coke, in Liford's Case, 11 Coke, 46, courts have held that a conveyance or reservation of standing trees, with no limitation as to the time within which they should be removed, conveyed or reserved the trees and an interest in the soil sufficient for their growth, etc. 1 Washb. Rev. Prop. 16. Such was the holding in Knotts v. Hydrick, supra; Robinson v. Gee, 26 N. C. 186; Baxter v. Mattox, 106 Ga. 347, 32 S. E. 94; and many other cases cited in the well-prepared briefs of counsel.

It is manifest that, while judges so held, they recognized the fact that practical difficulties were presented in working out a practical remedy

for enforcing the right. This is illustrated by the process of reasoning resorted to by the court in Robinson v. Gee, supra. A reservation in fee simple was made of "all the sawmill, pine timber on the land standing and being, or which may hereafter stand or be on the said land," or any part thereof, with full and absolute privilege of egress and regress in and upon the said land at all times, for the purpose of cutting or taking away the said reserved timber. The court said that:

"When any of the trees and saplings by full growth became timber, fit to be used at the sawmill, then there would be a cesser of estate in those trees, by the owner of the land, and a use in the timber trees would spring up and vest in him, whoever he was, who could deduce his title under the said reservation, with a perpetual license to enter and cut and carry away the timber."

This was an action at law. It is quite impossible to reconcile many of the decisions found in the adjudged cases and much of the reasoning on which they are based.

[5] It can, however, be safely said that, in the construction of timber deeds, the courts have adhered to the elementary principle that the intention of the parties should be ascertained and enforced, as in the construction and enforcement of other contracts. It is equally well settled that, where an indication of intention to limit the time within which the timber was to be cut and removed was found, and the period for cutting and removing was uncertain, the court would infer that both parties intended that it should be done in a reasonable time, and in this I understand the South Carolina court is in harmony with the uniform current of judicial opinion. Complainant insists that, conceding this to be true, a time limit is fixed by the terms of the deed in this record (that is, "as long as may be desired"), and that this language has been held by the Supreme Court of South Carolina to give to the grantee of the timber the right to fix the time, which right the court cannot control. To sustain this contention, it relies upon the recently decided case of Midland Timber Co. v. Prettyman, 97 S. C. 247, 81 S. E. 484. The learned counsel stresses the language of the court: "When the parties speak for themselves, the court cannot imply." Defendants urge upon the attention of the court the peculiar facts in, and history of, this case, insisting that it does not constitute a rule of property binding upon this court in the disposition of this case. The record, which has been filed by counsel, discloses the following facts: The Atlantic Coast Lumber Company took from Mrs. Heape, the owner of a tract of land, a deed for the timber, the terms of which, in respect to the description of the timber, was the same as in the deed from Dennis to Farr, trustee. The period fixed for cutting and removing the timber was ten years, with an extension clause in the identical language found in the Dennis deed. The Midland Timber Company acquired the title and rights of the Atlantic Coast Lumber Company. At the expiration of the ten years, no timber having been cut or removed, the timber company made a tender of the interest on the purchase price, giving notice that ten years' additional time to cut and remove the timber was desired. This was refused. Repeated tenders were made, with like refusals on the part of the owner of the land. The Midland Timber Company entered into a contract to sell, and Prettyman to buy, the timber and rights claimed

under the deed from Mrs. Heape. The timber company tendered a deed to Prettyman, demanding the purchase price, the payment of which was refused, upon the ground that it was not entitled to the extension of time demanded or to any extension. The Midland Timber Company and Prettyman submitted the question to the court, in an action without controversy, upon an agreed state of facts. The circuit court held that the title of the timber company was valid and adjudged that Prettyman execute the contract by taking the deed and paying the purchase money. From this judgment Prettyman appealed. The Supreme Court, without deciding the question presented upon the record, remanded the case with instruction to make Pearson, the then owner of the land, a party to the record. This being done, the controversy was submitted to Judge Spain, who rendered a decree for the plaintiff, and this, upon appeal, was affirmed; the Chief Justice, for a majority of the court, adopting Judge Spain's opinion without discussion, Justices Hydrick and Fraser concurring. Mr. Justice Watts dissented. Judge Spain's decree does not mention, or in any manner refer to, the rights of Pearson, the owner of the land; he simply directs that Prettyman pay the purchase money and accept the title. While Judge Spain was of the opinion that the language of the deed was unambiguous and left no room for an implication that the parties intended to limit the time "desired" to "a reasonable time," yet he is equally explicit in finding that the time demanded was reasonable; hence the decree may be sustained upon that finding, although it would not seem that he so intended. It is probable that as Pearson, the owner of the land, was party to the record, noted exceptions to the decree, and joined in the appeal, he would be bound by the decree, although it makes no reference to his rights. With all possible deference, I am unable to interpret the decision as a departure from the principle announced in the Flagler and other cases, enforcing the reasonable time rule when the deed indicates such to have been the intention of the parties, although the language of Judge Spain, adopted by the court, is capable of such construction. Conceding pro hac vice that the decision in Prettyman's Case is the last declaration of the law of that case, by the Supreme Court of South Carolina, and giving to it its full authoritative value, I am of the opinion that it is not controlling authority in this court upon the pleadings and proofs before me. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359. It will be observed that Judge Spain says that the extension clause, in the deed before him, identical with that in the Dennis deed, upon the authority of Alderman v. Wilson, 71 S. C. 64, 50 S. E. 643, "conferred a privilege or option, and did not affect the rights which had already been granted."

The deed before the court in Young v. Camp, supra, was, in respect to the extension clause, in the identical language as in the deed in this record. Judge Keith says, in respect to the effect of this language:

"There seems to be a little diversity among the cases, most of them holding to the effect that the purchaser has no title to any timber which is not cut [and removed] at the expiration of the time specified therefor, although a very few hold that the title to the timber in such case is still in the purchaser, but that the right to enter for the purpose of cutting and removing it is lost thereby "

The court of West Virginia, in Adkins v. Huff, supra, after discussing the several lines of thought on this question, says:

"By the great weight of authority, it is determined that no right or title exists in the grantee after the expiration of the time specified in the deed or contract."

The court, in the Camp Case, supra, held that, upon a fair construction of all the parts of the deed, the defendant was entitled to a reasonable time, after the expiration of the fixed period, to cut and remove.

[6] It is uniformly held that, while the grant of the trees, coming within the description, vested a present interest in that respect, the contract is executed; but, in respect to the period fixed for removal and the extension of such time, the contract is executory. Bunch v. Lumber Co., 134 N. C. 116, 46 S. E. 24. This is, of necessity, the correct interpretation of the contract, giving to it a twofold character. In respect to the grant of the timber, nothing further remains to be done by either party; in respect to the cutting and removal within the time fixed, if free from ambiguity, the license is irrevocable; in respect to the extension of the time, when the grantee is to pay an additional amount, as in this and many other cases, interest on the original purchase money, it is executory—an option on the part of the grantee to pay the interest and a promise on the part of the grantor, upon his doing so, to extend the time. When the terms of the contract in regard to the time of extension are uncertain, the court will infer that the parties intended that the timber shall be cut and removed in a reasonable time; and this is a mixed question of law and fact, usually to be decided by the jury, in the light of competent and relevant testimony.

We are thus brought to the consideration of the facts disclosed in the record. Complainant prays that the court enjoin defendant W. H. Dennis, who is the only one of the defendants interfering with or cutting and removing the timber. It is not alleged, nor is there any suggestion, that the other defendants have cut or removed any timber, or threaten to do so. As to them, neither the allegations nor proof show any equity for injunctive relief. The only decree which can be asked against them is that they specifically perform the executory contract of their predecessor in title. If complainant is entitled to this decree, it follows that defendant W. H. Dennis, who justifies under the deed from his codefendants, should be enjoined from continuing to cut and remove the timber. While there is no specific prayer for specific performance as against the defendants, under the general principles of equity pleading and practice, the prayer for general relief entitles the complainant to such relief as, upon the proofs, it shows itself entitled. The witnesses were examined before me orally, and the merits of the controversy fully disclosed.

[7] While it is elementary that, in the absence of allegations of fraud or mistake, parol evidence is not competent for the purpose of contradicting or altering a contract, reduced to writing, it has been well settled, since the decision by Sir William Grant, M. R., in Woolam v. Hearn, 7 Ves. 211, 2 L. C. Eq. 410, that:

"When equity is called upon to exercise its peculiar jurisdiction by decreeing specific performance, the party to be charged is let in to show that, under the circumstances, the plaintiff is not entitled to have the agreement specifically performed." Bispham, Eq. 381.

This is not upon the theory that, in such cases, the court reforms the written agreement or corrects the mistake, although it is within its power, and is sometimes done, and specific performance of the agreement, as reformed or corrected, decreed. The true ground upon which the parol testimony is admitted, on the part of the defendant, is that specific performance not being a matter of absolute right but of sound judicial discretion, the chancellor should be in possession of every fact and circumstance attending the negotiation and execution of the written agreement, to enable him to so mold his decree that justice and right be awarded.

"When the terms of a written contract have been ambiguous, so that, adopting one construction, they may reasonably be supposed to have an effect which the defendant did not contemplate, the court has, upon that ground only, refused to enforce the agreement." Note to Woolam v. Hearn, supra.

The well-settled principles by which courts of equity are governed, in enforcing specific performance of executory contracts, is recognized and enforced by the courts of South Carolina. The recent decisions upon this question are cited by Mr. Justice Watts in his dissenting opinion in Timber Co. v. Prettyman, supra. Marthinson v. McCutchen, 84 S. C. 256, 66 S. E. 120. See, also, Rexford v. Southern Woodland Co. (D. C.) 208 Fed. 295, where the South Carolina cases are cited; Bispham's Eq. 371 et seq.

The uncontradicted evidence in this record shows that, at the time of making the contract and signing the deed, Gen. Dennis and Mr. Boatwright, who represented Mr. Farr, after examining the property, "discussed the matter fully as to how long they should have to get this timber off of the land; and it was clearly understood that they should have eight years, and, if all of the timber was not cut off the property before the expiration of eight years, that they should have such additional time as was necessary to get off the remaining timber." They were to commence cutting within eight years. That was the mutual understanding. Most of the land on which the timber is standing is pine land "very fine pine land." The parties, at the time of making the contract, "discussed the question of opening up the land to cultivation. Gen. Dennis said that he wanted to clear the land. He was a farmer as well as a lawyer. * * * It was understood that he wanted to open up the land." Gen. Dennis, with his family, resided upon the land, about one-third of which was cleared. It appears from the record that he had five children. Their ages are not stated; but it appears that they have all reached their majority. The age of Gen. Dennis is not stated, nor are we informed as to the date of his death, except that it was prior to April 29, 1911. In ascertaining the intention of the parties, in respect to the time within which the timber was to be cut, it is necessary to, so far as possible, put ourselves in their position, with reference to the subject-matter of the contract, and their

relation to it. From this viewpoint, it is proper to note the terms of the deed and contract with respect to the effect their enforcement would probably have upon the uses to which the land, upon which the timber is standing, would be put, and the condition of the family, in its relation to the land and the owner. These are all relevant facts. It is manifest that neither of the parties understood that the land was being sold, or permanently so incumbered as to practically destroy its value for the purpose of dwelling upon or cultivating it. It is impossible to underestimate the effect upon the value of the land for sale, or any other purpose, by the extensive, burdensome, and almost unlimited easements upon and rights to its use by the grantees of the timber. In the unlimited discretion of the grantee, or his representatives and assigns, the right to use the land was subject to be practically destroyed. If, as the complainant contends, these burdens are without limitation as to time, the owner cannot himself, nor can his grantee, nor his heir at law, clear an acre of the land, nor could it, at his death, with any degree of safety, be divided among his children, or made of value to them as dwelling places or for purposes of cultivation. He and his children became little more than tenants at sufferance, with their rights, both in respect to time and extent of the use thereof, subject to the uncontrolled and uncontrollable "desire" of the grantee and his representatives or assigns. When we look to the status of the parties, it is proper to consider that of both the grantor and grantee. It is evident, from recitals in the deeds in evidence, that Farr was buying up large quantities of timber in the section of the state in which this timber was situate, for the purpose, either by himself or through a corporation, in which he was, or expected to be, interested, of manufacturing it into lumber. There were very large mills at Georgetown, S. C. It is clear that he was not purchasing for indefinite holding as an investment. This timber, together with timber purchased at approximately the same time and in the same and adjoining counties, was, within a few months, conveyed by Farr, trustee, to the Oneida Timber Company. Is it not an almost irresistible conclusion in the light of the existing conditions, that both parties contemplated that the timber would be cut and removed within the time fixed and, if necessary, a reasonable extension thereof, to complete the cutting and removal? This conclusion is strengthened, if not removed from the domain of doubt, by the uncontradicted testimony of the only living witness to the negotiation and execution of the contract, at least the only one introduced. From this viewpoint, the language of Judge Keith is both appropriate and convincing. He says:

"We cannot think that the grantors ever intended to confer any such right upon the grantee; and that it would be unreasonable to hold that it was intended to confer upon the Camp Manufacturing Company a right to cut and remove within a wholly indefinite period the timber which it had purchased." Young v. Camp, supra.

It is uniformly held that, when specific performance of an executory contract is enforced, "the agreement must be mutual. Its terms must be certain and its enforcement must be practicable." Bispham, Eq. 377. Measured by either test, the complainant is confronted with difficulties.

The grantee and his assigns come under no obligation to pay the interest "year by year." They may at any time, at their election, stop the payment and leave the owner of the timber without remedy; if the timber becomes of less value, or is destroyed by fire, or, for any other cause, the complainant does not deem it to its interest to continue the payment of the interest, it is under no legal obligation to do so.

In Marble Co. v. Ripley, 10 Wall. 339, 359 (19 L. Ed. 955), Mr. Justice Strong says:

"It is a general principle that when, from ... mal incapacity, the nature of the contract, or any other cause, ... is incapable of being enforced against one party, that party ... dly incapable of enforcing it specifically against the other." Solon.... Sewerage Co., 142 N. C. 439, 55 S. E. 300, 6 L. R. A. (N. S.) 391.

The complainant is a Virgi... corporation, with but small capital stock; has no property in South Carolina; is not engaged in cutting timber; has no facilitie. ... doing so. Defendants are required to pay all taxes both on the land timber.

"What is meant by ... ality is that the contract must be of such a nature that performance on both sides can be judicially secured." 26 Am. & Eng. Enc. 32.

Taking complainant's expression of its "desire" for time to cut and remove the timber as 25 years, would it be reasonable, just, or equitable to incumber the title of defendants, the heirs of their ancestor, and, in all probability, their heirs, with the burden fixed upon the land by the decree which complainants seek?

The contract must be certain in its terms. The language of the Dennis lease ... certain. It is suggested that an unlimited time is given or, at ... time of which complainant is the sole judge. It is next suggested that the time is "year by year"; that is, that, by the payment and acceptance of the interest "year by year," the extension is granted for the current year. It is, however, in this case said that the agreement is to extend for a reasonable time, the extent of which is to be fixed by the grantee, at the expiration of the first period of eight years. Adopting this view, complainant, at that time, gave notice that it "desired" 25 years, carefully reserving, however, the right to the easements in fee simple, etc.

Without pausing to discuss the reasonableness of either of these views, it is sufficient to say that there lurks, in the terms of the contract, painful uncertainty. Assuming, however, that these difficulties are passed, the enforcement by the court must be practicable. The timber conveyed is described as "all the timber of every kind and description, both standing and fallen, ten (10) inches stump diameter, and upwards, twelve inches from the ground, at the time of cutting." The deed bears date May 5, 1903. By what practicable method, at the expiration of 25 years, is the timber standing on the land at the date of the deed to be distinguished and separated from that which has germinated since that date is not suggested. What timber the owners of the land may, during all of these years, cut and remove, because not included in the description, not on the land at the date of the deed, must of necessity be equally uncertain. It is expressly provided that he is not to

220 F.—34

"clear" any of the land. The length of time required for trees, of the various kinds found upon such lands, to grow to the size suitable for cutting into merchantable lumber, is dependent upon various conditions—the fertility of the soil, moisture, drainage, seasons, and others equally uncertain.

Without undertaking to speculate in regard to these uncertain elements, it is manifest that to decree specific performance of the contract, as interpreted and asked by complainant, would be to introduce elements of uncertainty which would insulate and isolate the entire tract of land from any valuable or useful purpose during a quarter of a century, without a single compensating advantage to its owners. Marble Co. v. Ripley, supra, in which, for other reasons, the court refused specific performance because it was impracticable—the time during which performance was to run; change in parties; the fact that the court would be called upon to determine elements of uncertainty. In such cases the parties are left to their remedy for breach of the contract by an action at law for damages.

There is, however, another view of this record which is entitled to consideration. The time fixed for cutting and removing the timber expired May 5, 1911. On April 29, 1911, the Midland Timber Company, then owner of the timber and timber rights, served written notice on the defendants, demanding an extension of 25 years, with a tender of the interest, which was refused, and on May 5, 1911, another tender was made and again refused; defendants insisting that the time for cutting expired on that day. No further tender was made or action taken by the timber company until June 28, 1913, when it executed a deed to complainant undertaking to convey the timber and easements. This deed recited, in explicit terms, the payment of a large sum of money as the consideration upon which it was made. In truth nothing was paid, nor did complainant come under any obligation to cut any portion of the timber at any time. It simply promised to pay for the timber "as cut." No tender was made or action taken by complainant until January 28, 1914, when this bill was filed and $270 paid into the clerk's office for the benefit of defendants. It is of interest to note the purposes for which complainant was chartered and organized, as set out in its charter. It is very doubtful whether, upon a fair construction of its charter, the contract with the Midland Timber Company, and the contract which it proposes to make under the decree, sought in this case, is not ultra vires. It is quite manifest that no such contract was in the contemplation of the incorporators at the time of taking the charter. The real motive prompting its action is frankly stated by Mr. Montague, to secure a standing in this court.

It is suggested that the decision of the case of Midland Timber Co. v. Prettyman, supra, was not anticipated. Without pausing to discuss or decide the objection urged by defendants that the transaction is a fraud upon the jurisdiction of this court, it is manifest from the admitted facts that the complainant does not come into the court with any very meritorious claim upon its consideration or demand for the exercise of its extraordinary power to grant either injunctive relief or specific performance. It voluntarily comes into a contract after, as it al-

leges, defendants had breached its terms, with full knowledge of this fact. It claims under a deed containing a recital not true in fact. It assumes no obligation either to the timber company or defendants, permits a year to pass without notifying defendants of its assumed relations to them, and then files its bill invoking the equitable power of the court. The timber which it claims to own, and for which it has not paid a dollar, was worth, September 3, 1909, $4,850. The complainant fails to produce the contract with the Midland Company, although requested to do so. It will also be noted that the defendant the Midland Timber Company "owns 186,000 acres of timber land and is still very actively in business." The stockholders and officers of the two companies appear to be, to a large extent, the same persons. In McCable v. Matthews, 155 U. S. 550, 15 Sup. Ct. 190, 39 L. Ed. 256, Mr. Justice Brewer says:

"A decree for the specific performance of a contract for the sale of real estate does not go as a matter of course, but is granted or withheld according as equity and justice seem to demand, in view of all the circumstances of the case."

Among the reasons assigned for refusing a decree was that it was "a purely speculative contract on the part of plaintiff." Bispham, Eq. 376.

Without further pursuing the discussion, I am clearly of the opinion that in no aspect of the case is the complainant entitled to a decree extending the period for 25 years, during which it may, as its own election, cut and remove the timber from defendant's land, with all of the incidental burdens upon it. Counsel say that, if they are mistaken in their interpretation of the contract in that respect, complainant is entitled to a reasonable time, and ask the court to fix such time. It is true that, in several of the cases cited, the court fixed a time within which, after the decision, the grantee was given to cut and remove the timber. In the Camp Case, supra, one year was given. The court, in some instances, remanded the case for the judge to fix a reasonable time. In these cases it was manifest that the grantees intended to cut the timber; there was no speculative element in them. For the reasons stated, and the further reason that complainant has an adequate remedy at law, by an action for damages, for the alleged breach of the contract, and refusal to extend the time, I do not think any further time should be fixed by this court. The measure of damages, if plaintiff can make out its case, in an action at law, is clear. Defendants are the owners of the tract of land of 660 acres, upon which the timber, in 1909, was worth $4,850; hence, so far as this record shows, a judgment would be enforceable against them. It is shown, without contradiction, that Mrs. Dennis is solvent. I have not deemed it necessary to discuss or decide the controversy in regard to the tender alleged to have been made by the Midland Timber Company. I am of the opinion that, upon the pleadings and evidence, complainant is not entitled to a decree enforcing specific performance. The prayer for a permanent injunction must be denied.

A decree dismissing the bill at complainant's cost may be drawn.