UNITED TIMBER CO. v. BIVENS.

(District Court, E. D. South Carolina. October 11, 1918.)

No. 189.

1. TIME ⬯⟿10(10)—COMPUTATION—EXPIRATION.

Where a timber deed gave the grantee the right to demand an extension, etc., on expiration of the time fixed for removal, and the time expired on Sunday, a tender and demand, etc., made on the following secular day, will be treated as made on the day of expiration.

2. TIME ⬯⟿9(10)—COMPUTATION—TIMBER DEEDS.

Where a timber deed giving the grantee 10 years for removal provided for an extension of time on demand by the grantee and payment of interest, etc., the 10-year period should be computed by excluding the day of the deed and counting the last day, and a demand and tender on such day was in time, the grantee's estate not having determined.

3. LOGS AND LOGGING ⬯⟿3(11)—TIMBER DEED—CONSTRUCTION.

Where a timber deed gave the grantee 10 years for removal, and provided for an extension, etc., the grantee took a determinable fee, which would expire at the end of 10 years unless the period should be extended.

4. LOGS AND LOGGING ⬯⟿3(11)—TIMBER DEEDS—DEMAND FOR EXTENSION.

Where a timber deed fixing a period for removal provided that the grantee should have additional time desired on payment of interest on original purchase year by year, a demand for 15 years' additional time, or so much as desired, coupled with a tender of one year's interest, held sufficient.

5. LOGS AND LOGGING ⬯⟿3(11)—TIMBER DEEDS—EXTENSION OF TIME—REASONABLE TIME.

Where a timber deed allowing 10 years for removal, provided that the grantee should have such additional time as desired, held that a demand for 15 years' additional time, or so much as desired, was reasonable.

6. INJUNCTION ⬯⟿36(3)—INTERFERENCE WITH ACCESS TO LAND.

Where the owner of land, who had granted the timber, together with rights of way for removal, denied the grantee access to the lands, asserting the period for removal had expired without extension, held that, as the grantee's rights had not been determined, equity had jurisdiction to enjoin the owner from denying access, etc., there being no adequate remedy at law.

In Equity. Suit by the United Timber Company against Joseph Bivens, Sr. Decree for complainant enjoining defendant.

See, also, 248 Fed. 554.

Legare Walker, of Sommerville, S. C., and L. D. Lide, of Marion, S. C., for plaintiff.

J. P. K. Bryan, of Charleston, S. C., and Holman & Boulware, of Barnwell, S. C., for defendant.

CONNOR, District Judge. The bill, answer, exhibits, and evidence disclose the following facts:

On the 14th day of April, 1902, Ann Bivens and Prudence Bivens, the owners of several tracts of land situate in Dorchester, formerly Colleton county, S. C., aggregating about 5,000 acres, in consideration of $2,000, conveyed to R. P. Tucker "all of the timber, standing and fallen," on said tracts of land, with rights of way, easements, etc.

⬯⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On the same day John D. Boyle, being the owner of several tracts of land in the same county, in consideration of $1,500, conveyed to R. P. Tucker the standing and fallen timber on said tracts of the dimensions described in the deed.

On the same day Joseph Bivens, Sr., being the owner of several tracts of land in the same county, in consideration of $2,000, conveyed to R. P. Tucker the standing and fallen timber thereon of the dimensions described.

Thereafter the title to each of said tracts of land was conveyed to, and was at the dates hereafter set forth vested in, the defendant.

On the 14th day of October, 1903, defendant, Joseph Bivens, Sr., in consideration of $150, conveyed to F. S. Farr, trustee, the timber on one tract of land in said county. Each of said deeds contain the following clause:

"That the said party of the second part, his heirs and assigns, shall have, and the same is hereby granted to him or them, the period of ten years beginning from the date hereof, in which to cut and remove the said timber from the said land; and in case the said timber is not cut and removed before the expiration of said period. then that the said second party, his heirs or assigns, shall have such additional time therefor as he or they may desire, but in the last-mentioned event the said second party, his heirs or assigns, shall, during the extended period, pay interest on the original purchase price above mentioned, year by year, in advance, at the rate of six per cent. per annum."

By successive conveyances the title to the timber on the several tracts of land was conveyed to, and vested in, the Onieda Timber Company, a corporation chartered under the laws of South Carolina.

Plaintiff alleges that—

"at the expiration of said period of ten years, to wit, on the 15th day of April, 1912 (the 14th of April falling on Sunday), in the exercise of the right, power, and authority vested in and conferred upon it, in and by the said timber deed, * * * the Onieda Timber Company gave due notice in writing to Joseph Bivens, the defendant herein, that it desired fifteen (15) years additional time to cut and remove the said timber, and to use and enjoy the said timber rights, ways, privileges, and easements; and, in pursuance of the terms of the said timber deed, the said Onieda Timber Company, at the time of the giving of the said notice, tendered, in lawful money of the United States, the sum of one hundred and twenty dollars, being the interest on the purchase price of said timber."

The defendant refused to accept such amount, and it was deposited in the clerk's office for the use and benefit of defendant. Tender of the same amount was made on the 14th day of April of each and every year thereafter.

Tender of the interest on the purchase price of the timber on each of the other tracts of land set out in the bill was made, and notice given that the same period of time was required for cutting and removing the timber. Thereafter, and prior to filing the bill herein, the right, title, privileges, and easements which vested in R. P. Tucker, F. S. Farr, and the Onieda Timber Company were conveyed to, and vested in, complainant.

Defendant refused to accept the interest tendered on the purchase price of the timber on either of the said tracts of land, and refuses to

permit complainant to enter upon, cut, or remove any portion of the timber. Defendant admits that complainant is entitled to certain rights of way and easements over and across the lands. He denies that complainant is the owner of, or entitled to, the timber standing or fallen on said lands.

The two principal questions raised by the pleadings and the evidence are: (1) Was the tender of the interest made in apt time? (2) Was the time demanded by the Onieda Timber Company, 15 years for cutting and removing the timber, reasonable?

Both questions are earnestly and vigorously contested. Able and exhaustive arguments were made and briefs filed by counsel, with a wealth of authority.

[1-3] The briefs furnish an illustration of the truth of the observation of Justice Grier in Griffith v. Bogert, 18 How. 158, 15 L. Ed. 307:

"Whether the terminus a quo should be included, it must be admitted, has been a vexed question for many centuries, both among learned doctors of the civil law and the courts of England and this country. It has been termed by a writer on civil law (Tiraqueau) the 'controversia controversissima.' He says that: 'It was in consequence of the uncertainty introduced on this subject by the disquisitions and disputes of learned professors that Gregory IX, in his decretals, introduced the phrase of "a year and a day," in order to remove the doubts thus created, as to whether the dies a quo should be included in the term.'"

It seems that the rule in common usage included the day a quo, but many exceptions were introduced in its application to leases, limitations, etc., when forfeiture would ensue. The cases are conflicting, and have established no fixed rule as to such exceptions. Lord Mansfield in Pugh v. Leeds, Cowp. 714, reached the conclusion that the cases for two hundred years had only served to embarrass a point "which a plain man of common sense and understanding would have no difficulty in construing." The multitude of cases which find their way to the appellate courts fall into groups from which courts have evolved more or less general rules.

The tender will be deemed to have been made on April 14, 1912. Defendant insists that the day of the date of the deed, April 14, 1902, should be included in the computation of the 10 years to which the right to cut and remove is limited; that the right to tender the interest and give notice of the extension of time required expired on April 13, 1912.

The complainant insists that the Supreme Court of South Carolina has adopted the rule for the computation of time which excludes the first day and includes the last. This is controverted by defendant. It is not clear that the question comes within the rule that the construction given by the state court to language used in a contract, made in such state, is binding upon the federal court. It may be said, with much reason, that the court should assume that the parties used the language in the sense in which it had been construed by the state court, and that this court, for the purpose of effectuating their intention, should adopt that construction.

It appears that the Supreme Court of South Carolina has given the subject careful consideration. In Williamson v. Farrow (1830) 1 Bailey (17 S. C. L.) 611, 21 Am. Dec. 492, the judge, writing for the

court, after quoting the substance of the language of Lord Mansfield, says:

"The case before us, tried by this rule, will, I think, bring us to the conclusion that the day of the sale ought to be excluded. It was a sale on a credit of six months, and, if payment were not made at the end of that time, a resale was to take place on account of the purchaser. The intention of the parties, collected from the * * * subject-matter, and with a view to effect, and not destroy, the right of the purchaser, would manifestly lead us to the conclusion that the day of sale was intended to be excluded; for until the purchase was made, no credit could be given; and after it was made, and the credit had begun, it was to the purchaser important that he should have all the time. What was his natural conclusion? It certainly must have been that the credit began after the sale, and, as there are no fractions of a day, the day of sale must be excluded. * * * The rule may be deduced that whenever a forfeiture would be incurred by considering 'the day of the date,' or 'an act done,' as inclusive, then it shall be considered exclusive."

In cases of subsequent date the same rule is followed.

It is insisted, however, that in Hill v. Burton Lumber Co., 72 S. E. 1085 (1911), the court, dealing with a timber deed dated June 29, 1899, in which the grantee was given 10 years "from this date" to cut and remove the timber, included the first day. To estimate the value of this decision as an authority the facts must be understood. The deed was dated *June 29, 1899,* giving 10 years to cut. The grantee, construing it as conveying the timber in fee simple, on *January 8, 1910,* entered upon the land and began to cut. It appears that on *September 14, 1907,* the plaintiff, in consideration of "$250 to be paid annually in advance, commencing on *June 28, 1907,* for the term of five years, executed another conveyance to the defendant of all the timber on said tract excepting 100 acres of specified dimension," to hold the timber and rights of way for the full "term of five years from the *28th day of June, 1909.*"

It was conceded that on the 28th of June, 1909, defendant failed to pay the $250, but on October 11, 1909, the amount was tendered to the plaintiff, with interest, and refused, and on June 10, 1910, was again tendered and refused. The opinion of Chief Justice Jones makes it clear that the only question before the court was whether the deed of June 29, 1899, conveyed the timber in fee, with right in the grantee to remove it at its pleasure, or whether the title was a fee determinable, if not removed within 10 years from the date of the deed. The court held the latter to be the correct construction of the deed, citing a number of authorities. The Chief Justice, arguendo, said:

"As the ten-year limit for removal of timber under the above deed of June 29, 1899, expired June 28, 1909, it is clear that such deed affords no warrant for the acts of alleged trespass charged and admitted to have been committed on January 8, 1910."

Passing the question whether this language is not obiter—certainly not necessary to the decision of the question presented upon the record—it may be that the learned judge had in view the fact that, by the recitals in the deed of September 14, 1907, it was conceded that the time for cutting expired June 28, 1909. The defendant, to meet the difficulty presented by his failure to cut and remove the timber before June 29, 1909, contended that he had saved his rights by tendering the

$250 under the provisions of the deed of September 14, 1907, at any time prior to June 28, 1910, but the court held that this amount was to be paid "in advance, commencing June 28th, 1909."

The value of this decision, as an authority for the contention made by defendant, is much weakened by the fact that the question now being considered was not, and could not upon the facts as presented be, the basis of the decision. It is not probable that the court intended, by the language used, to decide a question to which, in earlier decisions, their learned predecessors gave careful consideration, reaching a conclusion differing from that which is attributed to the learned Chief Justice and his Associates. Giving to the *decision,* which is clearly in harmony with the best judicial thought of other courts and the decisions of that court, unquestioning concurrence, it is not a controlling authority upon this court for the contention made by defendant upon the question now under discussion. Counsel for complainant call attention to language used by the trial Judges in Gray v. Marion County Lumber Co., 102 S. C. 289, 86 S. E. 640, and Beaufort Lumber Co. v. Johnson, 107 S. C. 147, 92 S. E. 271, and Midland Co. v. Prettyman, 93 S. C. 13, 75 S. E. 1012, which they contend sustain their views. In his dissenting opinion upon another question in the Johnson case, Judge Watts says the complainant had until February 19, 1915, to make the payment, the deed being dated February 19th, 10 years prior thereto. Judge Gage concurred with him. While expressions are used by the judges indicating differing views, the question presented here was not in issue.

While an examination of the numerous cases, in both state and federal courts, discloses variant opinions, the conclusion reached by the author of the exhaustive note to Halbert v. Land & Live Stock Asso., 49 L. R. A. 193 (247), is sustained by the authorities:

"There seems to be one general rule, with reference to counting the first and last days in the computation of a period of time, which, subject to exceptions based upon the language of the provision for time or upon the surrounding circumstances, seems to have remained the same throughout the whole period of the common law, and which remains practically the same under the statutes and rules of court. That rule is that in the computation of time one of the first and last days of the period shall be included and the other excluded. The question as to which * * * shall be included and which excluded, however, has been differently decided in different * * * jurisdictions, and has given rise to much conflict of opinion. The general common-law rule, as it originally existed, was that the first day was to be counted when the computation was to be from an act or event, but that it was not to be counted when the reckoning was to be from a day or from the day of an act or event. The more modern decisions have changed this rule, and, in the absence of a statute or rule of court controlling the question, the courts now compute time, as a general rule, by excluding the first day and including the last day; * * * and the general rule now existing, whether at common law or under the statutes, probably is that the first day of a period of time is to be excluded and the last day * * * included, but that either or both days may be either included or excluded, if the language of the provision is such as to require it, or if by doing so a penalty or forfeiture will be avoided."

The same conclusion is reached in a later note to State v. Elson, 15 L. R. A. (N. S.) 686.

The rule, with its exceptions, is illustrated and enforced in a large number of cases cited in the notes. Homestead Fire Ins. Co. v. Ison, 110 Va. 18, 65 S. E. 463 (1909). In Sheets v. Selden, 2 Wall. 177, 17 L. Ed. 822, the question presented was when a lease expired. Judge Field says:

"The rent becoming due on the first of May, the one month from that time within which the payment was required to be made to prevent a forfeiture expired on the 1st day of June following. In the computation of the time the day upon which the rent became due was to be excluded. The general current of the modern authorities on the interpretation of contracts, * * * when time is to be computed from a particular day or a particular event, as when an act is to be performed within a specified period *from* or *after* a day named, is to exclude the day thus designated, and to include the last day of the specified period."

The rule is clearly stated by Chief Justice Shaw in Seekonk v. Rehoboth, 8 Cush. (Mass.) 371:

"We consider it now well settled, as a general rule, that when an act is to be done within a given number of days *from* the date, or day of the date, or act done, the day of the date is excluded; otherwise an act to be done in one day must be done on the same day, and, as there is no fraction of a day, such stipulation must create an obligation to do it instanter."

See, also, Seward v. Hayden, 150 Mass. 158, 22 N. E. 629, 5 L. R. A. 844, 15 Am. St. Rep. 183.

Looking to the intention of the parties, ascertained by reference to the subject-matter of the contract, it is manifest that they understood that the purchaser was to have 10 full years, of 365 days each, within which to cut and remove the timber. Fractions of a day will not be regarded. At the end of this period his right to the timber determined, unless he gave notice of the additional time required, and tendered the interest on the purchase price in advance. It is not probable that either party expected the purchaser to begin the work of cutting and removing the timber on a large body of land on the day upon which the contract was made and the deed executed. To do so required preparation, the hiring hands, taking team or machinery to the land. Courts must, in endeavoring to ascertain the intention of parties and giving a reasonable interpretation to their language and conduct, take notice of the usual and customary manner in which such contracts are made and performed. It is probable that the deed was drawn and executed during business hours of the day, that the parties were not on the land, and that the preparation necessary to performance was to be made after its execution. These considerations strongly impress my mind with the conviction that both grantor and grantee intended and understood that the day upon which the deed was executed should not be included in computing the period of time within which the cutting was to begin.

Adopting the construction placed upon deeds containing the same language used in this case by the Supreme Court of South Carolina, the grantee of the timber took by the deed a determinable fee. At the termination of 10 years the timber reverted to the grantors, unless extended by the tender of the interest and giving notice of the period de-

sired for cutting. The right of complainant to claim the benefit of the option to demand an extension of time for cutting is dependent upon the answer to the primary question when the period of time given to cut and remove the timber ceased. As the right to demand additional time is made conditional upon the payment "in advance" of interest "during the extended period," and this is required to be done "in case the said timber is not cut and removed before the expiration of the said period" of "ten years beginning from the date hereof," the tender on the 14th day of April, 1912, is within the time fixed by the contract.

It is conceded that the Supreme Court of South Carolina has uniformly held, in accordance with the courts of other states, that to avail itself of the right to demand the extension the grantee must, within the time or before the expiration of the period given by the deed to cut and remove the timber, notify the grantor or owner of the land what time is required and tender the interest in advance. It is generally held by the state courts that the title of the grantee of the timber expires, determines, at the end of the period fixed for cutting and removing, and that the superadded clause gives an option to the grantee of which it may avail itself by compliance with its terms to demand the extension. The decisions of the state courts are cited in Crown Orchard Co. v. Dennis (D. C.) 220 Fed. 516, to which others of a later date may be added. It is not, for the purpose of disposing of the instant question, very material to inquire whether this is the correct view. If the tender was made during or before the expiration of the period of time given to cut and remove the timber, complainant was entitled to demand a reasonable time in addition to the period of 10 years.

[4] Defendant insists that the written notice given defendant, stating that complainant required "fifteen years additional time from and after the 14th day of April, 1912, within which to cut and remove the said timber, and to use and enjoy the said rights of way, privileges, and easements, during which extended period, or so much thereof as may be used for such purposes," does not comply with the terms of the contract; that the time demanded should have been for a fixed and definite period, without any qualification, such as, "or so much as may be used for such purposes." I am unable to adopt this view. The requirement of the payment of "interest year by year" excludes the suggestion that "a lump sum," equal to the interest for the entire period demanded, was contemplated. It is manifest that the purpose of the extension was to enable complainant to cut and remove the timber, and when this was done his right or license to go upon the land determined, except so far as certain easements granted in fee enlarged it. It may be that owners of timber lands have by these contracts either made, or unconsciously been drawn into making, hard and inequitable bargains, granting exclusive rights and imposing heavy burdens upon their lands for long periods of time. The courts cannot, by strained construction, defeat the operation of the words used, or deprive the grantees of the rights conferred. An examination of the numerous decisions of the courts, with some exceptions, discloses an appreciation of the practical difficulties presented by them and the hardship imposed by their en-

forcement. But for the controlling authority of decided cases, I should find difficulty in imposing such burdens upon large and valuable tracts of land, upon unilateral contracts—when only one of the parties is bound, the other being permitted to abandon the contract and repudiate its obligations at its pleasure. I have been impressed with the language used by the eminently wise and learned late Chief Justice of Virginia in Young v. Camp Mfg. Co., 110 Va. 678, 66 S. E. 843. I am constrained to conclude that upon the authority of decided cases the notice complied with the terms of the contract.

[5] This leaves open the question whether the time required—15 years—was reasonable. This is a question of fact, to be decided upon testimony disclosing the conditions which should be taken into consideration in fixing a reasonable time to cut and remove the timber. I heard the witnesses orally. It is necessarily difficult for a court, having no other knowledge or information in regard to the conditions by which it must be guided, in respect to which the testimony is conflicting, more or less colored, by the relation which the witnesses bear to the parties and the subject-matter, to reach a very satisfactory conclusion. When the judge undertakes to put himself in the place of the parties to the contract at the date of the transaction, and from the viewpoint thus obtained say what they intended—that is, what both understood, what the owner of the land thought he was granting, the extent to which, in point of time, he was disabling himself from clearing his lands or bringing them under cultivation—he finds it difficult to see his way clearly. Courts have been impressed with the hardship worked by specifically enforcing these executory extension clauses of timber contracts, resulting in conflicting decisions. While there is much difference of opinion in the testimony of the witnesses, and it is largely a matter of opinion as to what constitutes reasonable time to cut and remove the timber on the lands included in the bill, I conclude that, in view of the size of the tracts and the situation of the parties, 15 years is not an unreasonable time within which to cut and remove the timber.

[6] Defendant insists that the only ground upon which complainant invokes the equitable jurisdiction of the court is found in the allegation that, unless relief is granted by injunction, it would be compelled to resort to a large number or multiplicity of actions at law for protection of its rights, and that the bill cannot be maintained until its legal title has been established in an action at law; that it must be adjudged that complainant has the legal title to the timber. It is argued that, although the evidence may show other grounds for equitable relief, complainant having relied upon the allegation that unless relief be granted, it will be driven to a multiplicity of actions, it is confined to that ground for relief. It may be conceded that a court of equity will not enjoin a trespass, except pendente lite, unless plaintiff has established its legal title to the property in an action at law. The basis of equitable jurisdiction in such as the instant case is found in the inadequacy of the remedy at law. A claim to the legal title to a tract of land of which defendant is in possession must be asserted and established in a possessory action at law or an action of trespass—this is elementary. If defendant is not in possession, a court of equity will entertain a bill

to remove a cloud from or quiet title, and, if necessary, effectuate its decree by a permanent injunction.

Here, however, complainant does not claim to own, or be entitled to possession of, the land upon which the timber is standing and growing. He alleges title to the timber, with a license, supported by a valuable consideration, to enter upon the land owned by, and in the possession of, defendant, for the purpose of cutting and removing its timber. The claim may be likened to an easement or a right of way. The refusal of defendant to permit it to enjoy the license or easement deprives complainant of the use of its property. It is manifest that in an action at law the remedy for the denial of this right would be inadequate. If complainant undertook to enter upon the land and was forcibly resisted, a judgment for damages for the assault upon its employés would be of no value in securing the enjoyment of the right to cut and remove the timber. The case presented upon the bill and evidence would seem to come within the class described by Prof. Pomeroy, 1 Eq. 250 (3d Ed.):

"The very object of preventing a multiplicity of suits assumes that there are relations between the parties out of which other litigations of some form might arise. But this prior existing cause of action, this existing right to some relief of the plaintiff, need not be equitable in its nature. Indeed, in the great majority of cases in which the jurisdiction has been exercised, the plaintiff's existing cause of action and remedial right were legal; and it is because the only legal remedy which he could obtain was clearly inadequate to meet the demands of justice, partly from its own inherent imperfect nature, and from its requiring a number of simultaneous or successive actions at law, that a court of equity is competent to assume or exercise its jurisdiction. It follows, as a necessary consequence, and this point is one of great importance to an accurate conception of the whole doctrine, that the existing legal relief to which plaintiff, who invokes the aid of equity, is already entitled, need not be of the same kind which he demands and obtains from a court of equity; on the contrary, it may be, and often is, an entirely different species of remedy."

Complainant, after setting out its title to the timber, and the tender of the interest on the purchase price, and refusal by defendant to accept it, alleges that on September 10, 1917, it sent its employés upon one of the tracts upon which the timber had been conveyed, known as and referred to in the deeds as the "Blue House" tract, for the purpose of—

"clearing out a right of way for the location and construction of a tram road to be used in connection with the cutting and removing of the said timber from the said tract of land, and all the other tracts of land hereinbefore mentioned and described, and for the purpose of doing other work preparatory to the cutting and removing of the said timber from the said lands and in the proper and legitimate prosecution and exercise of its rights; that the defendant, in willful and wanton violation of the complainant's rights as hereinbefore set forth, and with intent to hinder, delay, harass, and impede the complainant in the exercise of its said rights, forbade complainant's agents and servants from entering upon the said lands for the purposes aforesaid," etc.; "that defendant thereupon, instituted a suit against complainant in the United States court, alleging that he had suffered actual damage on account of said entry and trespass in the sum of $500, and demanding vindictive damage in the sum of $50,000."

A copy of the complaint in the action at law is attached to the bill.

Defendant admits complainant's allegations of fact, but alleges that complainant's employés cut trees outside of the right of way to which

he conceded complainant was entitled, and denied that "he has interfered, or has any intention of interfering, with the complainant in the lawful use of its permanent rights of way," etc.; that the tenders of interest, as the basis for its demand for an extension of the time for cutting and removing the timber, were not made within the time fixed by the contract, and that the time demanded was unreasonable. It is clear that the determination of this action would not settle the rights of the parties.

It is thus made apparent that the settlement of the controversy in this suit is dependent upon the solution of two questions: Was the tender made in apt time? This depends upon the construction of the language in the deed. Was the time demanded unreasonable? This is a question of fact. The timber in controversy is upon 11 tracts of land, aggregating many thousand acres, all belonging to defendant. Complainant's claim is based upon the same essential facts in respect to each tract.

Complainant's title to the timber is of no value unless it is permitted, or its right secured, to go upon the land for the purpose of cutting and removing it. No judgment, or number of judgments, in actions at law, would secure that right or its enjoyment.

While the general principle invoked by defendant in his attack upon the equitable jurisdiction of the court is conceded, as said by Prof. Pomeroy, "the rule is one of expediency and policy, rather than an essential condition and basis of equitable jurisdiction." Section 252.

In Kilbourn v. Sunderland, 130 U. S. 514, 9 Sup. Ct. 596, 32 L. Ed. 1005, Chief Justice Fuller said:

"The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would confer under the same circumstances."

In Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. 340, 36 L. Ed. 82, it is said:

"Under section 723 of the Revised Statutes [Comp. St. 1916, § 1244], the remedy at law, in order to exclude equity, must be as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity." Walla Walla v. W. W. Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341.

In Wylie v. Coxe, 15 How. 415, 14 L. Ed. 753, it is said:

"There may be a legal remedy, and yet, if a more complete remedy can be had in chancery, it is a sufficient ground for jurisdiction."

In Crown Orchard Co. v. Dennis, 229 Fed. 657, 144 C. C. A. 62, it was held, upon similar facts, that plaintiff was entitled to a permanent injunction.

The state courts have taken jurisdiction on the equity side of their dockets in cases involving the rights of grantees of timber, with rights of way, upon similar state of facts. If complainant is entitled to the extension of time to cut and remove the timber, its title thereto has not determined or reverted to the defendant. It is manifest that its rights cannot be adequately enforced in an action or a series of actions at law.

Without further discussion, I will sign a decree enjoining defendant from preventing or interfering with complainant's employés and agents cutting and removing the timber in accordance with the terms of the deeds set forth in the bill. The defendant will pay the cost.